IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| REGINA L. CAWTHON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 14-3008 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Regina L. Cawthon seeks review, pursuant to 42 U.S.C. § 405(g), of

the administrative law judge's decision denying her application for disability

insurance benefits.

Pending are motions for summary judgment filed by both parties.

Plaintiff's motion is allowed.

The case is remanded.

I. BACKGROUND

A. Plaintiff's testimony

Plaintiff Regina L. Cawthon was born in 1983 and alleges an onset

date of July 16, 2008.  At the May 10, 2012 hearing before the administrative law judge ("ALJ"), the Plaintiff testified she is 5'1" tall and 196 pounds.  She is married but separated from her husband and lives with her eight-year old son.  The Plaintiff lives in a public housing apartment and is not employed and has no current source of income.  She finished the eleventh grade and obtained her GED.

The Plaintiff testified she had last worked on July 16, 2008, when she was injured while working at Jones Poultry, where she had worked for approximately a year.  She injured her back lifting boxes of chicken.  The Plaintiff received steroid injections, which helped, and takes hydrocodone as prescribed.  Since the injury, the Plaintiff has looked for work in the fast food industry or as a waitress but was not hired.

Prior to working at Jones Poultry, the Plaintiff worked at the front desk of Heritage Inn and Suites for approximately three months.  She testified she had also worked at Ozark Land gift shop for several months where she made t-shirts using a press and worked as a cashier.  The Plaintiff also previously worked as a banquet waitress at a hotel at Lake of the

Ozarks Country Club serving people in the hotel restaurant. She also testified she worked as a laborer in a factory.

The Plaintiff testified that, on an average day, she wakes up and has to sit for at least 25 to 30 minutes because it "feels like pins and needles in the morning." She helps her son get ready for school and then lays down for an hour before showering. The Plaintiff gets dressed and sits for awhile. She pulls a chair up to the sink and does the dishes sitting down. Her son helps with some chores and, on weekends, her husband comes over and sweeps or mops. The Plaintiff states she cannot stand for more than seven to ten minutes at a time.

The Plaintiff testified she has one good friend who comes over and visits. She is able to shop at Wal-Mart because there are benches where she can sit. She usually sends her husband or mother to do her grocery shopping.

The Plaintiff testified that she had problems standing at work during her last few months at Jones Poultry. The pain in her feet, hands, legs and arms had gotten worse. Her psoriasis had gotten worse as well.

The Plaintiff likes to draw, do crafts with her son, watch movies and go fishing if it is flat enough for her to use chairs and keep her feet up. She smoked a pack to a pack-and-a-half of cigarettes per day. She does not drink or use drugs but did go to rehab six years ago for meth use, which she used for about two years. The Plaintiff testified she has not used meth for seven years.

B. ALJ's Decision

ALJ Dina Loewy followed the five-step sequential evaluation of disability, pursuant to 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 16, 2008, the date the Plaintiff alleges as her onset date. At step two, the ALJ determined that Plaintiff had a number of severe impairments, including psoriatic arthritis, degenerative disc disease of the lumbar spine, obesity, depression and anxiety. At step three, the ALJ determined that those impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four, the ALJ found that Plaintiff has "the

residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours in an 8-hour workday, and stand and/or walk 6 hours. She can occasionally climb ramps and stairs, and balance[,] stoop[,] kneel and crawl. She should never climb ladders, ropes, or scaffolds, must avoid concentrated exposure to irritants or chemicals, and is limited to routine tasks." R. 22.

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a poultry processor and waitress. The ALJ determined, at step five, upon considering the testimony of the vocational expert, the Plaintiff could perform a significant number of jobs in the national economy, including light machine worker, assembler and manual worker.

Accordingly, the ALJ found that Plaintiff is not entitled to a period of disability or disability insurance benefits and is not eligible for supplemental security income payments, under the applicable sections of the Social Security Act.

On November 15, 2013, the Appeals Council denied the Plaintiff's

request for review.  This action followed.

## II. DISCUSSION

### A. Standard of review

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner.  See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010).  The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Yurt v. Colvin, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).  Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion."  Id. at 856-57.

B. Analysis

(1)

The Plaintiff claims the ALJ's decision is not supported by substantial evidence. First, the Plaintiff alleges the ALJ erred in determining the Plaintiff's bipolar and anxiety do not meet Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders) and her somatization disorder is not severe and does not meet Listing 12.07 for somatoform disorders, "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07. Second, she asserts the residual functional capacity determination is not compliant with the mandates of SSR 96-8p, which requires the ALJ to determine an individual's residual functional capacity, or the most "an individual can do despite his or her limitations or restrictions." SSR 96-8P, 1996 WL 374184. Finally, the Plaintiff contends the ALJ's credibility determination was patently erroneous.

The Commissioner contends that the ALJ reasonably found that the Plaintiff's limitations did not preclude her from performing all work

activities. Along with the Plaintiff's work history, moreover, the observations of treating physician Korhan B. Raif, M.D.; recommendations from other physicians that Plaintiff increase, rather than decrease, physical activity; the opinions of state agency physician Henry Rohs, M.D. and state agency psychologist Joseph Mehr, Ph.D.; the Plaintiff's course of treatment and the objective medical evidence all supported the ALJ's residual functional capacity finding.

(2)

The Court is unable to find that the ALJ's opinion is supported by substantial evidence. The ALJ does not mention the Plaintiff's diagnosis of fibromyalgia. Citing Skarbeck v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004), the Commissioner contends that by giving significant weight to the opinion of Dr. Rohs, the ALJ accounted for the Plaintiff's fibromyalgia. In Skarbeck, the Seventh Circuit observed that an ALJ can account for an impairment by adopting the limitations of specialists and reviewing doctors who were aware of the impairment. See id. at 504 (noting that by adopting the limitations of those who were aware of the claimant's obesity, it was

factored into the ALJ's decision even if it was not explicitly considered). The Commissioner contends that because Dr. Rohs considered fibromyalgia as the Plaintiff's primary diagnosis and the ALJ's residual functional capacity was consistent with Dr. Rohs's opinion, the ALJ's residual functional capacity finding accommodated any fibromyalgia-related limitations.

It is not apparent how much weight the ALJ gave to Dr. Rohs's opinion. Although the ALJ's residual functional capacity may be somewhat compatible with Dr. Rohs's opinion, he does not discuss Dr. Rohs's opinion. Thus, the record is unclear as to whether the ALJ's residual functional capacity finding is based on Dr. Rohs's opinion or another medical opinion in the record.

Fibromyalgia can constitute a medically determinative impairment if a doctor's diagnosis is supported by evidence meeting certain criteria. See Thomas v. Colvin, 826 F.3d 953, 959 (7th Cir. 2016). "[W]ithout any analysis from the ALJ, there is no basis for drawing any conclusions about what evidence he considered or overlooked." Id.

The Plaintiff notes that a lack of objective evidence is commonly found with fibromyalgia patients. Symptoms or conditions associated with fibromyalgia can include "muscle aches, fatigue and depression." Id. The ALJ should have considered whether fibromyalgia was a cause of the Plaintiff's symptoms. The Court concludes that the failure to even mention the diagnosis and consider how the Plaintiff's fibromyalgia affected the residual functional capacity warrants a remand to determine what effect, if any, it had on her ability to work.

(3)

There are also problems with the ALJ's evaluation of the Plaintiff's alleged mental impairments. The ALJ concluded that the evidence showed that Plaintiff had the mental capability to perform simple and routine tasks. Dr. Mehr considered that Plaintiff had moderate limitations in sustained concentration and persistence, but indicated that those limitations would limit only the Plaintiff's abilities to understand, remember and carry out detailed instructions. Dr. Mehr concluded that Plaintiff's concentration, persistence and pace was sufficient for "simple jobs of a routine and

repetitive type." The Commissioner contends this constitutes substantial evidence supporting the ALJ's residual functional capacity finding.

As the Plaintiff notes, however, Dr. Mehr's opinion was issued in May 2010, before the Plaintiff was hospitalized in August and November of 2010, each time for five days. Her global assessment of functioning (GAF) scores in August and November ranged from 35 to 50, which generally indicates serious symptoms or worse. The ALJ's decision emphasizes some of the Plaintiff's higher GAF scores and ignores some of the lower scores. An ALJ may not cherry pick the record in considering an individual's mental health history. See Price v. Colvin, 794 F.3d 836, 839-40 (7th Cir. 2015).

Additionally, the Plaintiff notes that clinical psychologist Frank Froman, Ed.D., the Social Security Administration's consultative examiner, opined that Plaintiff had a GAF score of 50 and is likely to have difficulty relating comfortably with others, and seemed unlikely to be able to withstand the stress associated with customary employment. Unlike Dr. Mehr, however, Dr. Froman rendered an opinion after examining the

Plaintiff personally and after her hospitalizations in 2010.

For all of these reasons, the Court is unable to conclude that the ALJ's decision is supported by substantial evidence. The Court will remand the matter to the Commissioner for further consideration of the Plaintiff's residual functional capacity and whether she meets the criteria of a listed impairment.

Ergo, the Plaintiff's Motion for Summary Judgment [d/e 10] is ALLOWED.

The Defendant's Motion for Summary Affirmance [d/e 14] is DENIED.

Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Clerk shall enter a Judgment.

The decision of the Commissioner of Social Security is reversed and the case is remanded for further proceedings consistent with this Opinion.

ENTER: March 23, 2017

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge